Mr. Whalen, thank you as well for your argument. We are now going to move to Appeal 24-2394. This is United States v. Threats. Mr. Roy will recognize you for argument on behalf of the appellant. All right. Thank you, Judge. I'll say again for the record, Attorney Michael Roy on behalf of Appellant Sherman Threats. At the risk of sounding like a broken record, I also think that this is a simple case. I think it just comes down straight to issues of contract and plea agreements. In this case, there was a plea agreement. There was nothing prohibiting the parties from amending it orally. We have on the record, on the transcript, oral amendments to the agreement. The court accepted it. And once the court accepts a Rule 11C1C agreement, the court is bound to sentence within it. Was it, the thing that throws me off a little bit here is that colloquy that both sides recognize happened in the district court where the district judge is talking about 120 minus 27 and 180 minus 27, the 27 months being the credit on the state. Okay. I don't see any world in which he could have received a 93-month sentence because of the statutory mandatory minimum. I agree. And that was the whole basis of the 28th J letter the government filed yesterday. There's no way. But you don't know ex ante. You don't know at the time of the plea what the sentence is going to be. You have an idea on the range of it, right? Right. And you focus on the high end of it that way. But you don't know that when the plea is happening. Correct. Yeah. But I do think that the discussion about the fact that they can't go below 120 is a little bit of a red herring because at the time of the plea agreement, there was still the possibility with scheduling that they would have some actual concurrent sentencing, right? If they had bumped up the sentencing hearing, gotten all their ducks in a row faster, they could have done some of the sentence actually concurrent, not just the sort of fake virtual concurrent through credit, right? And for what the judge actually did, there's no doubt the judge had authority to subtract the 27 months from the high end. It really only becomes an issue if they start getting into an argument about the low end and then there would be an issue about whether the court's going into an illegal sentence. That could be the basis of a separate appeal by the government. So there's a couple of ways to read it. One could be that because they're bound by what's legally possible, you can construe the agreement to actually be 120 to 153 rather than 93 to 150. But you're effectively reading the transcript, at least as I understand your argument, that Mr. Threatt's left the plea allocution very much believing that that was coming down by 27 months. Yes. And that's where I'm not sure I'm on board with that. Well, are you referring to... Well, because I just think there was a colloquy that it could come down by 27 months, it could come down on the low end. I think there'd be legal error with that. And there's definitely a reference it could come down on the high end, but the pleas, not the sentencing. Sentencing is going to be forthcoming.  And that's where I think, I don't know that he was promised anything. It's possible, but I don't think he was promised anything. I think the transcript that we have the long block quotes for, sorry, on page six of the brief. I mean, just want to march through it. I agree with the government that there's a little bit of hedging by defense counsel when they first start talking about the credit, right? There's defense counsel's like, this is a determination to be made. We're going to have arguments about it. But that gets cleared up very quickly. The court says, okay, well, government, is there an agreement on it? And that's what the court actually said, is there an agreement on this? Government says there isn't an agreement on paper, which of course, it's not an agreement. But I don't think there will be an argument at sentencing. The court then continues to confirm that the sentence I impose should be concurrent. Both parties say yes. The court then goes on to, you know, say all the things that we've quoted over and over that, okay, so I can reduce it by whatever I impose. That's going to mean 27 months. So really, then the quote, so really this thing goes down to a significant, you know, 120 minus 27, what is that, 93 months to whatever, 180 minus 27. Those are the ranges then, right? Why can't the judge answer those questions? The judge can ask the questions. Where does the judge ever promise him what he's going to do? I mean, this just seems to me the judge trying to figure out what's going on, what the open issues are going to be. I agree. Where's the additional promise from the government or the additional, you know, where's the additional promise from the government or the judge recognizing that there's a modification of the written document? Where does that occur? It's when the court asks the parties to confirm, so there's no disagreement that the sentences should be imposed concurrent. And in that context... But that's not, that's not, the government lawyer says there isn't an agreement on paper, but I don't think there will be an argument at sentencing. And the judge clarifies the sentence I impose should be concurrent, yes, yes. So the government lawyer is saying, I don't think there will be an argument at sentencing. But then there was. I mean, I don't, I think when the government's saying, I don't think there'll be an argument at sentencing... What would you, what would you think, you know, basic, basic matter of contract interpretation, you call somebody on the phone and say, I need to buy new tires. I think I'm going to charge you $100 per tire. You go in and you get there and the guy says, well, actually they're $110 a tire. Do you have a contract to buy a tire at $100? I think the whole thing has to be read in the context of the entire conversation, not just personally. I agree. But... It seems like the judge is just asking questions and trying to figure out what's going on and what the issues are going to be at sentencing, which happens all the time in plea colloquy. I think immediately after that, then when the court says, so, after the defense says, okay, so the court says, so should that require a reduction, I reduce whatever time I impose by what he's already served because... Defense counsel, we would be asking for that. It's not, the defense counsel does not say, yes, judge, that is the agreement. That's in the plea. This is the defense counsel saying, yes, judge, this is a sentencing issue that you're going to have to decide. I read that as the defense saying, that is, we will be asking for you to use this mechanism to do this. And I agree, defense counsel sometimes uses sort of these Midwestern polite words. I grew up in Green Bay. I think I can say this about Northeastern Wisconsin. There's some Midwestern politeness here, right? And you read, there's a lot of sort of passiveness in the way defense counsel voices this. What do you think the range, do you think he walked out of the courtroom with a promise that the range is now 93 to 153? Because it doesn't make any sense to me to say he left the courtroom with the understanding that it was 120 to 153. If he left the courtroom believing it was, there was a modification, it had to have been 93 to 153. I think my response to that would be that plea agreements sometimes have illegal provisions in them. And that can happen. For example, there can be agreements to stipulate to guideline enhancements that as a legal matter maybe shouldn't have applied. Plenty of examples like that. And whether that then becomes an issue on appeal always depends on things like plain error waiver, et cetera. Just because the way that they formed their agreement left open the door supposedly for having an illegal sentence, I don't think that means that their agreement was necessarily void. I do still think there was a meeting of the minds here. And the government's silence at the end of this discussion, I don't think means that the government wasn't agreeing with it. Toward the end though of a full reading, page 12, lines 1 through 11, the judge reviews his penalties. Then he says, and it can be reduced from that to account for the sentence that you served. You've been serving on the revocation. To the extent the revocation is due to the same conduct, is that a correct statement of where we are? Defendant, yes, sir. Defense counsel, yes, your honor. So in that full reading, I certainly understand the focus on page 6. But page 12, after the review of the maximum and minimum penalties, the judge does hit this point, doesn't he? Can be reduced and to the extent the revocation is due to the same conduct. Yeah, though I would quibble that the use of the word can is necessarily dispositive there. I think that's the judge sort of stating more where we're at based off of the earlier conversation. This is why oral amendments generally are not allowed to contracts. This is a weird situation because it's in a courtroom, there's a transcript, so now we're arguing about an oral negotiation. But oral contracts are always going to be messy around the edges. And I think that's part of the issue here. But as a subjective matter, there's no doubt that Mr. Threat's thought the max was minus 27. He said so at the sentencing hearing. He was shocked. So the question is whether that was a reasonable interpretation by his part. What reliefs is he asking for? Specific performance to be sentenced with a max of 153. Yeah, as in D.S. Hymanus. I see no rebuttals, so... Very good. We'll give you some rebuttal time. We'll now move Mr. Stewart to you for argument on behalf of the government. May it please the Court, Carter Stewart for the United States. Sherman Threat's got a favorable plea agreement. As charged, he was facing a minimum of 120 months in prison. His guidelines range was 262 to 327 months, and he faced a maximum of life in prison. The government could have filed information that would have more than doubled the mandatory minimum sentence he was facing. None of these sentences would have included guaranteed reductions for the 27-month ratification sentence. Against this backdrop, Mr. Threat's and the government agreed to an 11C1C plea that contained a clear language regarding the sentencing provision, 120 to 180 months. Mr. Threat's got the benefit of his bargain, a sentence of 180 months, years below the exposure he was facing, absent that plea agreement. Now Mr. Threat's is asking this Court to remand, as he just said, for a 27-month reduction in his sentence, giving him specific performance, to a 153-month sentence. That request is unsupported by the text of the plea agreement, and it is not supported by the transcript that his counsel has cited here and before this Court today. His argument rests on the exchange of the change of plea, which of course he has discussed in his argument. But the government believes that that exchange does not support his request for several reasons. First, the district court repeatedly emphasized that it could, but not that it would, reduce Mr. Threat's sentence by 27 months. At no point in the transcript does either the district court or counsel for the government say that the sentence will definitely be reduced by the 27 months that he now states. When the government stood up and asked for a 180-month sentence, Threat's' counsel did not object. He never said that that sentence is outside the scope of what we agreed to. And finally, Threat's' argument assumes that the district court agreed on the record to agree to a sentence that was at least half unlawful. As your honors have pointed out, the sentence of 93 months would have never been permissible given that Mr. Threat's was facing a 120-month mandatory minimum. Now on argument, Mr. Threat's' counsel has come up and said that sometimes plea agreements contain unlawful provisions, and certainly that is the case, that occasionally the parties make mistakes. But that is not all we're talking about in this case, because it is an 11c1c plea, and because the supposedly unlawful provision came out of the judge's mouth, this court would have to conclude that the district court judge interjected, stated that an unlawful sentence was permissible, and then accepted a plea agreement binding himself to impose a potentially unlawful sentence. And the government simply does not believe that the record supports that conclusion. If your honors have no questions, then I will yield the balance of my time. Thank you, Mr. Stewart. Thank you. Mr. Roy, let's go back to you with two minutes of rebuttal. A couple of points. The first is that our argument's not just about what Judge Griesbach said at the hearing. It's also, I mean, primarily comes down to the agreement between Mr. Threat's and the  And at the very least, I think it's pretty clear that the government made a promise not to argue against the credit, right? That was, they said, there won't be an argument on that. And in the context of an 11c1c agreement where the entire purpose under Rule 11 is to create a range for the sentence, saying that we're not going to fight the credit, that is the promise there. Now, separate from that, I understand 11c1c is kind of a weird situation where the judge is almost like a third party to the contract, right? Because even though there's a separate federal rules for it, there's a process of acceptance, the judge understanding, and then when they accept it, they have it. And I mean, our position, of course, is that there is a agreement from Judge Griesbach here. And when he didn't follow that in the sentencing hearing, we're not arguing that he purposely slighted Mr. Threat's or anything. I think it was just a mistake. And I think an important context is, right, Judge Griesbach took senior status five years ago. At the time of the sentencing, he was still the only judge in the Green Bay Division. This was not filled until November 2024, his position. So he has a busy docket. This was months later. There wasn't a transcript left of the plea hearing. He is coming in without a record of everything that was said at the previous change of plea hearing. Unless there's any further questions, I will sit down. Very good. Thank you, Mr. Roy. Thank you, Mr. Stewart. The case will be taken under advisement.